PER CURIAM.
 

 Sandralee Rodgers is the former owner of real property sold at public auction by the County of Monroe, New York, in a tax foreclosure sale. Shortly after the sale, but before a deed was recorded by the County and delivered to the purchaser, Rodgers filed a petition for relief under Chapter 13 of the bankruptcy code, which triggered its automatic stay provision.
 
 See
 
 11 U.S.C. § 362. Rogers took the position that the automatic stay prevented the County from recording or delivering the deed. The County, on the other hand, concluded that the public auction completed the sale of the property and extinguished any rights Rodgers may have had in it and that, consequently, the automatic stay did not bar the transfer and recording of the deed. When the County conveyed the deed to the purchaser’s assignee and accepted the remaining purchase price, Rodgers sought to have the County held in contempt for violating the automatic stay. The bankruptcy court concluded that the property was not part of Rodgers’s bankruptcy estate since the public auction extinguished all her legal and equitable interests in the property.
 
 See
 
 11 U.S.C. § 541(a)(1). On appeal, the district court agreed. We affirm.
 

 DISCUSSION
 

 The facts are undisputed. Rodgers owned a single-family residence in Webster, New York. She owed the County real-property taxes and related fees totaling approximately $7,300 and, on October 25, 2001, it sold the property for that amount to John Polchowski at a tax foreclosure sale. Pursuant to the terms of sale, Polchowski paid a deposit of ten percent, with the balance due a month later; upon payment, he would receive his deed. Polchowski subsequently assigned his bid and deposit at a premium to William Lis-sow, a named defendant.
 

 On November 6, 2001, Rodgers filed a bankruptcy petition hoping that the automatic stay would block transfer of the
 
 *66
 
 deed and resurrect her ability, lost under state law, to redeem the property. She contended that since a deed had not been transferred, she retained “legal or equitable interests ... in property” that, upon the filing of this petition, became property of the estate.
 
 See
 
 11 U.S.C. § 541(a)(1). Rodgers’s Chapter 13 plan contemplated the payment of the delinquent real estate taxes, and related fees and interest, to the County. Rodgers insisted that transfer of the deed would violate the automatic stay, which bars “any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.” 11 U.S.C. § 362(a)(3). The County, however, concluded that since, under New York law, the property had already been sold and Rodgers’s right of redemption had expired, the property was not property of the bankruptcy estate. Accordingly, the County accepted the remaining balance due, recorded the deed, and delivered it to Lissow.
 

 Rodgers moved in bankruptcy court to hold the County in contempt for having violated the automatic stay and to set the transfer aside. The bankruptcy court denied the motion:
 

 As in the case of regularly conducted New York In Rem Mortgage Foreclosure Proceedings, in a New York In Rem [] Real Estate Tax Foreclosure Proceeding such as that conducted by the County of Monroe, ... once the owner’s right to redeem has been extinguished by the completion of the public sale: (1) the foreclosed property is not property of the estate for purposes of Section 541, even though the owner may retain some incidents of ownership between the time of the public sale and the time when the referee delivers a deed; and (2) the Stay provided for by Section 362 does not apply to prevent the referee from delivering a deed.
 

 (Jan. 10, 2002 Order (No. 01-24220) at 10).
 

 Rodgers appealed to the district court, which affirmed “substantially for the reasons” given by the bankruptcy court. (June 14, 2002 Order (02-CV-6091L) at 1). Rodgers appeals this decision. Our review of a judgment of a district court sitting as an appellate court on bankruptcy matters is plenary and, accordingly, we independently review the factual determinations and legal conclusions of the bankruptcy court.
 
 Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC),
 
 330 F.3d 111 (2d Cir.2003). We affirm.
 

 The central question for us is whether, after the sale at public auction, but before completion of payment and delivery of the deed, Rodgers possessed “legal or equitable interests” in the property, so that it became part of the bankruptcy estate. 11 U.S.C. § 541(a)(1). State law generally determines the existence of these interests:
 

 Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests'should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.
 

 Butner v. United States,
 
 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).
 

 Two conclusions drove the decisions below. The first is that, under New York law, a tax foreclosure sale occurs when the property is “struck down” at auction, rather than when the deed is conveyed to the purchaser, and this sale extinguishes the debtor’s interests in the property, unless a right to redeem exists. The second is that Rodgers’s right to redeem expired, at the latest, at the conclusion of the auction.
 
 *67
 
 Our review of New York law convinces us that both conclusions are correct.
 

 Section 22 of the Monroe County In Rem Tax Foreclosure Act (the “Foreclosure Act”) provides that the right of redemption for any person having “any right, title or interest in or lien upon any parcel included in [a] foreclosure judgment” continues until noon of the day preceding the date of commencement of the public auction.1962, as amended, N.Y. Laws 905. Rodgers acknowledges this provision but insists that § 22 is trumped by another provision of the Foreclosure Act— § 28 — which provides that it is the recording of the deed that finally bars redemption.
 
 [1]
 
 We disagree. Although § 28 makes clear that the recording of the deed extinguishes any interests retained by others and authorizes the grant of fee title, it does not extend or recreate previously expired redemption rights. Moreover, as the bankruptcy court noted, besides the Foreclosure Act, the Notice of Sale and Judgment of Foreclosure and Sale in the tax foreclosure proceeding specifically provided that the last opportunity for the debtor to redeem the property was noon on the day preceding the October 25, 2001 public sale.
 

 As the bankruptcy court further noted, the Foreclosure Act also states that, except as specifically provided in the Act, tax foreclosures are governed by the provisions of law and practice applicable to mortgage foreclosures. 1962 N.Y. Laws 905 § 34(9). Bankruptcy courts have uniformly held that, under New York mortgage foreclosure law, a debtor’s right of redemption of, and interest in, the property is extinguished by the auction, not by the subsequent delivery of the deed.
 
 [2]
 
 In reaching this conclusion, these courts have applied principles long embedded in New York law. As one court has noted:
 

 This principle — that a mortgagor’s interest in and right to redeem a mortgaged property is terminated by a valid foreclosure
 
 sale
 
 — whether
 
 or not a deed has been delivered to the purchaser
 
 — has been part of New York law
 
 for over
 
 a century. Thus, as early as 1865 the Court of Appeals declared that “the foreclosure, and a sale by the master, barred the mortgagor’s equity of re
 
 *68
 
 demption
 
 ... A deed was not necessary to accomplish that result.” Tuthill v. Tracy,
 
 31 N.Y. 157, 162 (1865);
 
 accord, Barnard v. Jersey,
 
 39 Misc. 212, 79 N.Y.S. 380 (Sup.Ct.1902) (right to redeem is terminated by the foreclosure sale and not by the Referee’s [delivery of the] deed to the purchaser).
 

 Citibank, N.A. v. Press Realty Corp.,
 
 139 Misc.2d 558, 528 NY.S.2d 307, 308-09 (Sup.Ct.N.Y.Cty.1988) (emphases added);
 
 see also United Capital Corp. v. 183 Lorraine St. Assocs.,
 
 251 A.D.2d 400, 675 NY.S.2d 543, 543-44 (2d Dep’t 1998) (“It is well settled that the owner of the equity of redemption has a right to redeem at any time before an actual sale under a judgment of foreclosure.”);
 
 Trustco Bank, N.A. v. Bakin,
 
 256 A.D.2d 778, 681 N.Y.S.2d 410, 412 (3d Dep’t 1998) (“It is axiomatic that defendants’ title and right to possession of the mortgaged premises ... continued until the equity of redemption was extinguished at the foreclosure sale.”).
 
 [3]
 

 Relying on § 244 of New York’s Real Property Law, Rodgers contends that she remained the owner of the property until the actual delivery of the deed. Section 244 provides: But this provision does not apply to foreclosure judgments; it governs voluntary transfers of real property, where a seller may retain rights to rescind because he continues to hold legal title. It does not apply where, as here, an owner has lost “ ‘legal [and] equitable interest in real property after a foreclosure sale, even if the formal transfer of the title has not taken place.’ ”
 
 Citibank,
 
 528 NY.S.2d at 309 (quoting
 
 In re Ghosh,
 
 38 B.R. at 603).
 

 A grant takes effect, so as to vest the estate or interest intended to be conveyed, only from its delivery; and all the rules of law, now in force, in respect to the delivery of deeds, apply to grants hereafter executed.
 

 In light of these well-settled principles, we agree with the bankruptcy court that, in the context of either a tax or mortgage foreclosure, under New York law, “once the ability to redeem has been lost pre-petition, the foreclosed property sold at a public sale is no longer property of the estate for purposes of Section 541.” (Jan. 10, 2002, Order (No. 01-24220) at 15). Rodgers maintains that her possession of title to the property alone “should have been sufficient to find the Property to be property of the estate,” whether or not she had the right to redeem under state law. (Br. at 13). But the critical inquiry is whether she had, under state law, any legal or equitable ownership interest that survived the auction. As we have seen, she did not because “the estate’s legal and equitable interests in property rise no higher than those of the debtor,”
 
 First Fidelity Bank v. McAteer,
 
 985 F.2d 114, 117 (3d Cir.1993) (internal quotation omitted), and the estate only “includes proper
 
 *69
 
 ty to which the debtor would have a right if the debtor were solvent.”
 
 Id.
 
 (citing
 
 In re La. World Exposition, Inc.,
 
 832 F.2d 1391, 1401 (5th Cir.1987)).
 

 Rodgers is correct that the Supreme Court observed in
 
 United States v. Whiting Pools, Inc.,
 
 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), that “Congress intended a broad range of property to be included in the estate.”
 
 Id.
 
 at 204, 103 S.Ct. 2309. But as the Court’s discussion of the legislative history of § 541(a)(1) indicates, “Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title.”
 
 Id.
 
 at 205 n. 8, 103 S.Ct. 2309 (citing 124 Cong. Rec. 32399, 32417 (1978) (remarks of Rep. Edwards)). Because Rodgers lost her legal and equitable interests in the property by virtue of the foreclosure sale, the property did not become property of the estate when the bankruptcy petition was filed.
 

 Finally, Rodgers contends that, even if the property was not property of the bankruptcy estate, her retention of record title barred, by operation of the automatic stay, delivery of the deed to Lissow. Again, we disagree. To reiterate, under New York law, the foreclosure sale “effectively cut off [Rodgers’s] legal title” in the foreclosed premises.
 
 In re Butchman,
 
 4 B.R. at 380. The purchaser at a public auction is entitled to a deed.
 
 See In re Cretella,
 
 42 B.R. at 531. Although Rodgers may have retained some “incidents of ownership,” (Jan. 10, 2002 Order at 10), between the time of the sale and the delivery of the deed — for example, a limited right of possession — the delivery of the deed was a ministerial act that did not impair any property interest retained by Rodgers and, thus, was not subject to the automatic stay.
 
 See In re Pulcini,
 
 261 B.R. 836, 841 (Bankr.W.D.Pa.2001);
 
 cf. Rexnord, Holdings, Inc. v. Bidermann,
 
 21 F.3d 522, 527 (2d Cir.1994) (holding that “simple and ‘ministerial’ ” act of entry of judgment by court clerk does not violate automatic stay);
 
 In re Canney,
 
 284 F.3d at 375 (holding that the issuance of a writ of possession after strict foreclosure “is a ministerial act that is not tolled by the automatic stay provision”).
 

 CONCLUSION
 

 The judgment of the district court is affirmed.
 

 [1]
 

 . Section 28 provides:
 

 Upon the execution and recording of such deed the grantee shall be seized of an estate in fee simple absolute ... and all persons including the state, infants, incompetents, absentees and nonresidents, persons in prison and all other persons or corporations whether under disability or not, who may have had any right, title, interest, claim, lien or equity of redemption in, to or upon such parcel of land shall be forever barred and foreclosed of all such right, title, interest, claim, lien or equity of redemption.
 

 1962 N.Y. Laws 905 § 28.
 

 [2]
 

 .
 
 See, e.g., In re Mizuno,
 
 288 B.R. 45, 49 (BanknE.D.N.Y.2002) (rejecting debtor's contention "that he continued to have an equitable right to redeem the Property up until the point of the actual conveyance of the deed from the Referee” to the purchaser);
 
 In re Cretella,
 
 42 B.R. 526, 532 (Bankr.E.D.N.Y.1984) ("It is thus abundantly clear that the mortgagor has no legal or equitable interest in real property after a foreclosure sale, even if the formal transfer of the title has not taken place, unless of course he has the right to redeem.”);
 
 In re Ghosh,
 
 38 B.R. 600, 602 (Bankr.E.D.N.Y.1984) ("[Ujnder New York law a debtor loses all equitable and legal interest in property validly sold at foreclosure whether or not the deed to that property has been delivered to the purchaser.”);
 
 In re Butchman,
 
 4 B.R. 379, 380 (Bankr.S.D.N.Y.1980) ("[T]he foreclosure sale effectively cut off the debtors’ legal title or equity of redemption in the mortgaged premises.”);
 
 cf. In re Canney,
 
 284 F.3d 362, 375 (2d Cir.2002) (applying Vermont's strict foreclosure law in holding that "once the redemption period has lapsed, the debtor's equity of redemption extinguishes and the debtor has no legally cognizable right or interest in the property.”).
 

 [3]
 

 . This is also the conclusion of one commentator on New York law:
 

 [T]he underlying objective of a foreclosure action is to extinguish the right of redemption of all interests in the property subordinate to that of the foreclosing plaintiff and to vest complete title in the purchaser at the foreclosure sale. That right of redemption, however, is not extinguished by a rendering of the judgment of foreclosure and sale, final though it be. Rather, the right to redeem survives up to the moment of an actual sale pursuant to the foreclosure judgment. Significantly, when the phrases "sale” or “actual sale” are employed, they are intended to refer to the auction sale which precedes the passing of actual title at the closing from referee to bidder. Thus, the right to redeem is extinguished when the property is "struck down” at the auction.
 

 Bruce J. Bergman,
 
 Bergman on New York Mortgage Foreclosures,
 
 § 27.02(2) (2001).