**In re Robert J. ELLIS a/k/a Robert Jefferson Ellis, Debtor.**

**Bankruptcy No. 184-40599-21.**

United States Bankruptcy Court, E.D. New York.

June 5, 1984.

Weiner & Silverman, New York City, for debtor.

Philip Irwin Aaron, P.C., Jericho, N.Y., for Ralph C. Sutro Co.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Ralph C. Sutro Co. ("Sutro") has applied for relief from the automatic stay imposed by 11 U.S.C. § 362 to remove a cloud on title to certain property located at 212–17 112th Road, Queens Village, New York. This property, which is claimed by the debtor, Robert J. Ellis, as his property in his petition, filed on April 4, 1984, was sold at public auction pursuant to a judgment of foreclosure and sale on April 6, 1984. Ellis, in his Affirmation in Opposition to Sutro's application, requests that Sutro and its attorney, Philip Irwin Aaron, P.C., be held in contempt because they allegedly had actual and constructive notice that the debtor had filed under Chapter 13 when they held the foreclosure sale.

## THE FACTS

There is no dispute with respect to the following facts:

On April 4, 1984, the debtor filed a petition under Chapter 13 of Title 11 in the office of the United States Bankruptcy Court for the Eastern District of New York at 225 Cadman Plaza East, Brooklyn, New York, which is located in Kings County.

Approximately one year earlier on the complaint of Sutro a judgment of foreclosure and sale had been entered against real property owned by the debtor at 212–17 112th Road, Queens Village, New York. This property is located in the County of Queens. No copy of the debtor's Chapter 13 petition has ever been filed in Queens County.

On April 6, 1984, despite the filing of the Chapter 13 petition on April 4, 1984, the property referred to above was sold to Red Carpet Realty Corp. ("Red Carpet") for $41,450.00. There is no evidence that Red Carpet had any knowledge of the pending bankruptcy proceeding nor has any connection been established between Red Carpet and Sutro. Red Carpet is a good faith purchaser.

As yet no deed has been delivered to Red Carpet by the referee.

The parties do not agree as to whether Sutro prior to the sale had knowledge of the Chapter 13 petition. Aaron, Sutro's attorney, has filed an affirmation alleging that "[a]t no time prior to the scheduled foreclosure sale did the debtor or the debtor's attorney attempt to contact this office or SUTRO to advise them of the filing in bankruptcy". Atty's Affirmation in Support, dated May 8, 1984, at p. 2.

The debtor's attorney, Bruce Weiner, in his affirmation alleges that Aaron's office was put on notice by conversations between a paralegal, Terese Cavanagh, employed by him, and personnel of Aaron's office. Affirmation in Opposition dated May 14, 1984, at pgs. 1, 2–3. According to Ms. Cavanagh's affidavit, she spoke to Aaron's secretary prior to the filing of the petition to obtain the mortgage arrears and after the petition was filed promptly advised Aaron's office of the debtor's name, the case number, the date of filing, and requested cancellation of the sale. Affidavit dated May 14, 1984.

## DISCUSSION

█ The filing of a petition under Title 11 automatically stays "the enforcement ... against property of the estate, of a judgment obtained before the commencement of the case"; "any act to obtain pos-

session of property of the estate or of property from the estate"; and "any act to create, perfect or enforce any lien against property of the estate". Section 362(a)(2),(3),(4).

When the debtor filed, the Queens property was property of his estate. 11 U.S.C. § 541(a). Therefore, its subsequent sale violated Section 362(a). Post-petition transfers like the April 6, 1984 sale may be avoided by a trustee in bankruptcy which includes a debtor-in-possession, like Ellis, with certain exceptions. One of these exceptions protects a transfer to a good faith purchaser at a judicial sale. Section 549(c).[1] Section 549(c) provides an exception to the rule that actions taken in violation of the Section 362 stay are void. Section 549(c) applies to Chapter 13 proceedings as well as those brought under Chapter 7. Matter of King, 35 B.R. 530, 531 n. 1 (Bkrtcy.N.D.Ga.1983); In re McGowan, 19 B.R. 952 (Bkrtcy.E.D.Pa.1982).

■ It is undisputed, as noted earlier, that no copy of the petition was filed in Queens County. Nevertheless, the debtor seeks to avoid Section 549(c) on the ground that until delivery of the deed, which has not yet occurred, there is no transfer of the property within the meaning of Section 549(c).

The law governing the debtor's interest in real property is determined by local law. See Haas v. Rendleman, 62 F.2d 701, 702 (4th Cir.), cert. denied 289 U.S. 750, 53 S.Ct. 695, 77 L.Ed. 1495 (1933); Ghosh v. Financial Federal Savings & Loan Association, et al. [In re Ghosh], 38 B.R. 600 at 603 (Bkrtcy.E.D.N.Y.1984) (Duberstein, B.J.).

■ The precise question here involved is when under the law of New York is property to be deemed transferred for the purpose of Section 549(c): is it transferred at time of the foreclosure sale or at the time of delivery of the deed? This question appears to be one of first impression in this state.[2] However, in analogous contexts, several bankruptcy courts in this state, including Bankruptcy Judge Duberstein, have had occasion to examine the question as to whether a debtor's interest in property is terminated by a foreclosure sale or by delivery of a formal deed and all have unanimously concluded that the effective act is the sale not the subsequent deed. In re Smith, 7 B.R. 106 (Bkrtcy.W.D.N.Y. 1980) (purchaser of real property at foreclosure sale prior to Chapter 13 filing declared free to accept delivery of referee's deed post-filing); In re Butchman, 4 B.R. 379 (Bkrtcy.S.D.N.Y.1980) (no cure of mortgage defaults available under Chapter 13 after foreclosure sale but before delivery of deed; Chapter 13 dismissed); Ghosh v. Financial Federal Savings & Loan Association, supra (debtor may not reconvert case to Chapter 13 to reinstate mortgage after foreclosure sale but before delivery of deed).

Bankruptcy Judge Hayes explained the governing principles as follows in In re Smith, supra:

"In New York, a valid Judgment of Sale, under § 1351 of the New York Real Property Actions and Proceedings Law, and the sale of the real property by the appointed referee, effectively cut off the legal and equitable interests the mortgagor has in the mortgaged premises, since these two things serve to transfer the

1. Section 549(c) reads as follows:
"The trustee may not avoid under subsection (a) of this section a transfer, to a good faith purchaser without knowledge of the commencement of the case and for present equivalent fair value or to a purchaser at a judicial sale, of real property located other than in the county in which the case is commenced, unless a copy of the petition was filed in the office where conveyances of real property in such property are recorded before such transfer was so far perfected that a bona

fide purchaser of such property against whom applicable law permits such transfer be perfected cannot acquire an interest that is superior to an interest of such good faith or judicial sale purchaser".

2. Since the question of when title passes is governed by local law it is not controlling that in Pennsylvania a foreclosure sale is not perfected until a deed has been issued and recorded. In re Dennis, 14 B.R. 125 (Bkrtcy.E.D.Pa.1981).

interests of those who have an estate in the land. 2A Warren's Weed-New York Real Property § 13.07 (4th ed. 1980). Specifically, the mortgagor's right of redemption, which can still be exercised after the Judgment of Sale, no longer exists after the sale itself; the sale cuts off any such right. Id. § 15.03; 38 N.Y. Jur. Mortgages § 286; Marks, Maloney & Paperno, Mortgage & Mortgage Foreclosure in New York (1980); *Belsid Holding Corp. v. Dahm,* 12 A.D.2d 499, 207 N.Y.S.2d 91 (2d Dept.1960). Additionally, once a valid judgment is obtained and a sale takes place, the purchaser is entitled to a referee's deed. New York Real Property Actions and Proceedings Law, § 1353; 38 N.Y.Jur. Mortgages § 286".

As the Supreme Court pointed out in *Barnard v. Jersey,* 39 Misc. 212, 79 N.Y.S. 380 (1902), it has always been the law in New York that the mortgagor's equity of redemption is barred by the foreclosure and sale and that a deed is not necessary to accomplish that result.

See also, *Mintz v. Lahey,* 7 Misc. (2d) 934, 936–37, 164 N.Y.S.2d 351 (Supreme Court, Kings 1957); 15 Carmody-Wait 2d, § 95:17 at 586 (2d Ed.1967).[3]

Red Carpet as a purchaser in good faith at a judicial sale is covered by Section 549(c) even though no deed has as yet issued.

The conclusion that the sale terminates the debtor's interest is reinforced by the law respecting the related question of the debtor's right to the protection of the Section 362 stay in order to cure arrears under a mortgage under Chapter 13. As the Second Circuit had occasion to point out in *In re Taddeo,* 685 F.2d 24 (2d Cir.1982) continuance of the stay, where the purpose of the Chapter 13 plan is to cure mortgage arrears, is justified only if the debtor's plan can in fact provide for the mortgage. "Otherwise, the stay would serve only to delay foreclosure for delay's sake, and would not be justified". 685 F.2d at 26.

In *In re Acevedo,* 26 B.R. 994, 997 (E.D. N.Y.1982) District Judge Mischler held that the right to cure arrears existed up to the time of sale, impliedly negating its existence thereafter. Judge Mischler said:

"Under New York law, a foreclosed mortgage is not merged into the foreclosure judgment until the actual sale of the property occurs. See *Prudence Co. v. 160 West Seventy Third Street Corp.,* 260 N.Y. 205, 183 N.E. 365 (1932); *Dulberg v. Ebenhart,* 68 A.D.2d 323, 417 N.Y.S.2d 71 (1st Dep't 1979); *Monday Properties, Inc. v. A–1 Plumbing & Heating Co.,* 25 Misc.2d 625, 204 N.Y. S.2d 330 (Sup.Ct.1960). Since the mortgage 'exists' up to the time of actual sale of the property, it remains subject to cure pursuant to § 1322(b)(3) and (5). Accordingly, we hold that a debtor, under Chapter 13 may employ the curative provisions of § 1322(b)(5) to deaccelerate a mortgage obligation and reinstate its original payment schedule at any time prior to the actual sale of the encumbered property. See *In re Taddeo,* 9 B.R. 299 (Bkrtcy.E.D.N.Y.1981); aff'd 15 B.R. 273 (E.D.N.Y.1981), aff'd, 685 F.2d 24 (2d Cir.1982); *United Companies Financial Corp. v. Brantley,* 6 B.R. 178 (Bkrtcy.N.D.Fla.1980); *Matter of Breuer,* 4 B.R. 499 (Bkrtcy.S.D.N.Y. 1980)."

Therefore, the mortgagor's right to cure the mortgage arrears was cut off, albeit perhaps wrongfully, by the foreclosure sale. Accordingly, the Section 362 stay no longer serves any purpose since the proper-

---

**3.** This Court agrees with Bankruptcy Judge Duberstein that insofar as *Long Island Savings Bank v. Schoon,* 103 Misc.2d 600, 426 N.Y.S.2d 925 (1980) appears to suggest a different view, it misread *Neponsit Holding Corp. v. Ansorge,* 215 A.D. 371, 214 N.Y.S. 91 (1926) which involved a private contract to sell as to which different principles are applicable and where execution of a deed is clearly critical. *Ghosh v. Financial Federal Savings & Loan Ass'n, supra* at pp 602–603.

ty passed on April 6, 1984 to Red Carpet, and, therefore, should be vacated.

There remains the question of possible contempt by Sutro and its attorney in selling the property subsequent to the filing of the Chapter 13 petition. At the hearing on the motion for relief from stay the Court said that it would hold a further evidentiary hearing, with respect to the request that Sutro and its attorney be held in contempt, to determine the facts as to their knowledge of the pending Chapter 13 proceeding when they sold the debtor's property. On further reflection, this Court has concluded that it should not do so because a request for the exercise of the Bankruptcy Court's contempt powers requires a more formal document and notice than what appears to be an afterthought in an "Affirmation in Opposition". See Bankruptcy Rules 9014, 9020.

If the debtor wishes Sutro and its attorneys to be held in either civil or criminal contempt he will have to prepare and file with the Court a notice that complies with the appropriate bankruptcy rules. There should accompany such notice a memorandum of law explicating whether the debtor is seeking civil or criminal contempt, and if the former, from what source the bankruptcy court derives authority to punish such contempt, the effect on 28 U.S.C. § 1481 of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 454 U.S. 1029, 102 S.Ct. 564, 70 L.Ed.2d 472 (1981), and the precise sanctions the debtor wishes the Court to impose, and, if a fine, in what amount.

Accordingly, the debtor's request that this Court hold Sutro and others in contempt and "fine them and order them to pay costs and legal fees" is denied without prejudice to its renewal on proper papers.

For the foregoing reasons, the relief requested by Sutro is granted and the stay imposed by 11 U.S.C. § 362, with respect to the property described in this Opinion, is lifted.

Settle order on notice.