## In re DAVIDSON REHAB ASSOCIATES, a New York Limited Partnership, Debtor.

## DAVIDSON REHAB ASSOCIATES, a New York Limited Partnership, Plaintiff,

v.

## UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, D.W. Associates and Jerome Belson Associates, Defendants.

Bankruptcy No. 87B–12099 (HCB).
Adv. No. 88–5057A.

United States Bankruptcy Court,
S.D. New York.

July 18, 1989.

Marc Stuart Goldberg, P.C. by Marc Stuart Goldberg, Linda J. Mann, New York City, for plaintiff.

Benito Romano, U.S. Atty., by Susan P. Johnston, Asst. U.S. Atty., New York City, for defendant U.S. Dept. of Housing and Urban Development.

Kera & Graubard by M. David Graubard, New York City, for defendant D.W. Associates.

## DECISION AND ORDER

HOWARD C. BUSCHMAN III, Bankruptcy Judge.

In this adversary proceeding, Davidson Rehab Associates ("Davidson", "Plaintiff", or "Debtor"), filed an Amended Complaint against Defendants United States Department of Housing and Urban Development ("HUD") and D.W. Associates ("DWA"), and Jerome Belson Associates to avoid a non-judicial foreclosure sale of certain building properties. In its Amended Complaint, Davidson sets forth five causes of action under which it alleges that it may avoid the foreclosure sale. Here, Davidson moves, pursuant to Bankruptcy Rule 7056, for summary judgment on two of the five causes of action.[1] Davidson's First Cause of Action is based on Section 544(a)(3) of the Bankruptcy Code, 11 U.S.C. § 544(a)(3) (the "Code"); its Third Cause of Action is based on Section 549(a) and (c), 11 U.S.C. § 549(a) and (c). Defendants HUD and DWA oppose Davidson's motion and cross-move on the same grounds. Defendant Jerome Belson Associates, formerly the managing agent for Davidson, is not a party to these motions.

### I.

As established in the parties' respective Rule 13(h) Statements and supporting affidavits, there is no genuine dispute of any fact material to these motions. The relevant, undisputed facts are as follows: Debtor-in-possession, Davidson Rehab Associates, is a New York Limited Partnership. It acquired ownership in fee of certain premises, including four apartment buildings known as 2000, 2012, 2016 and 2020 Davidson Avenue, Bronx, New York on or about October 3, 1977 (the "Premises"). Contemporaneously, Davidson executed and delivered to Citibank, N.A. ("Citibank") a mortgage on the Premises in the amount of $2,359,200 (the "Mortgage"). That Mortgage, insured by HUD[2] was recorded with the City Register in Bronx County on October 6, 1977.

Because Davidson was in default on its mortgage payments, Citibank assigned the Mortgage to HUD for insurance benefits

---

[1]. Davidson characterizes this motion as an ordinary summary judgment motion, under Rule 56 of the Federal Rules of Civil Procedure and Bankruptcy Rule 7056. Davidson moves, however, pursuant to only two of the five causes of action (First and Third Causes of Action) set forth in its Amended Complaint. Thus, it is more precise to consider this motion as a motion for partial summary judgment (or partial summary adjudication) pursuant to Rule 56(d)

of Fed.R.Civ.P. *See* Wright, Miller & Kane, 10A Federal Practice and Procedure § 2737 (1983). Accordingly, this Court's decision is not a judgment on the entire case.

[2]. The mortgage was insured by HUD pursuant to §§ 221(d)(4) and 223(e) of the National Housing Act, 12 U.S.C. §§ 1715*l*(d)(4) & 1715n(e) (1984).

on April 1, 1980. The assignment of the Mortgage was recorded with the City Register on July 24, 1981. After the assignment, HUD attempted to bring Davidson's mortgage obligations current.

Failing to do so, HUD commenced foreclosure on the Premises through a non-judicial foreclosure sale pursuant to the Multifamily Mortgage Foreclosure Act of 1981, 12 U.S.C. §§ 3701 *et seq.* (1984) ("Foreclosure Act"). On March 5, 1987, HUD delivered a notice of intent to foreclose to Davidson. Thereafter, HUD designated a Foreclosure Commissioner[3] pursuant to the Foreclosure Act. The Commissioner sent four Notices of Default and Foreclosure Sale (one Notice for each building on the Premises) ("Notices") by certified mail to Davidson and its attorneys on July 31, 1987. Each Notice set forth, *inter alia,* information regarding the original mortgage made by Davidson, HUD's insured program, the designation of the Foreclosure Commissioner, the public auction to be held on August 31, 1987, and the bidding guidelines at the auction.

HUD, through the Commissioner, recorded the Notices with the City Register in Bronx County on August 18, 1987. The New York Law Journal published the Notices on August 10, 17, and 24, 1987. The Commissioner, through its agents, posted the Notices in two locations at each building on the Premises on August 22, 1987.

Pursuant to the Notices, a public auction of the Premises was held at the Bronx County Courthouse on August 31, 1987. After competitive bidding, DWA, a New York general partnership, was named the successful high bidder with its bid of $1,665,000.[4]

HUD and DWA closed title, which included the delivery and acceptance of the deed, on October 29, 1987, before noon. Later in the day, at 3:23 p.m., Davidson filed its Chapter 11 voluntary petition with the Clerk of this Court. Twenty-two minutes later, Davidson recorded its petition with the City Register. Two days later, DWA recorded its deed with the City Register.

## II.

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment should be granted, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

In this case, all the parties allege in their moving or cross-moving papers that there is no dispute as to genuine issue of material fact.[5] After examining the papers, this Court agrees. Here, there is no "genuine need for a trial" of the claims presented.

---

**3.** The Multifamily Mortgage Foreclosure Act of 1981, 12 U.S.C. §§ 3701 *et seq.* and 24 C.F.R. part 27.10, provide for designation of a commissioner to conduct a non-judicial foreclosure on behalf of HUD of a subject mortgage.

**4.** The total mortgage delinquency at that time was $2,611,207.26. Government's Rule 13(h) Statement at 2.

**5.** The Government, however, argues that because Davidson submitted only an affidavit of its counsel in support of its summary judgment motion, Davidson should not prevail under any circumstances. *See* Rule 56(e) of Fed.R.Civ.P.

The Government, citing a number of Second Circuit cases, urges this Court to disregard the attorney affidavit on the ground that it is not based on "personal knowledge," and therefore inadmissible in evidence. Here, however, there is no dispute of genuine issues of material fact, the facts set forth in Davidson's attorney affidavit essentially mirror the facts set forth in the Government's affidavits, and the affidavit recites matters of public record and are therefore in the attorney's knowledge. *See In re Transpacific Carriers Corp.,* 50 B.R. 649, 651 (Bankr.S.D. N.Y.1985).

Fed.R.Civ.P. 56 Advisory Committee Note (1963 Amend., Subdivision (e)). The critical inquiry, then, is whether "the moving [or cross-moving] party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

For the reasons stated below, Davidson's motion for summary judgment on its claims that the sale of property may be avoided under Sections 544(a)(3) and 549(a) and (c) of the Bankruptcy Code must be denied; and defendants HUD and DWA's cross-motion for summary judgment on the same grounds must be granted.

### III.

■ We turn to Davidson's first claim. The issue is whether Davidson had assumed the status of a hypothetical bona fide purchaser as of Davidson's Chapter 11 petition date to avoid the transfer of premises to DWA under Section 544(a)(3) of the Code.

Davidson argues that it assumed the role of a hypothetical bona fide purchaser claiming that, under New York law, it did not have constructive notice of the transfer to DWA. Defendants dispute this contention, arguing that the recording of Notice of Default and Foreclosure with the City Register in Bronx County, prior to the petition date, constituted constructive notice under New York law.

Section 544(a)(3) of the Code provides: (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> \* \* \* \* \* \*

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists. 11 U.S.C. § 544(a)(3).

Under this section, a trustee or a debtor-in-possession, as provided in § 1107(a) of the Code, may avoid any transfer of property of the debtor if a hypothetical bona fide purchaser at the time of the commencement of the bankruptcy case could do so. *See, e.g., In re Bygaph, Inc.,* 56 B.R. 596, 602 (Bankr.S.D.N.Y.1986); *In re Euro–Swiss Int'l Corp.,* 33 B.R. 872, 879, 11 B.C.D. 113 (Bankr.S.D.N.Y.1983); *In re Hardway Restaurant, Inc.,* 31 B.R. 322, 327, 10 B.C.D. 1063 (Bankr.S.D.N.Y.1983). While the trustee's status is established by federal bankruptcy law, his rights vis-a-vis other parties are controlled by applicable state law. *McCannon v. Marston,* 679 F.2d 13, 15 (3d Cir.1982); *In re McLean Indus., Inc.,* 84 B.R. 340, 347–48 (Bankr.S. D.N.Y.1988); *In re Bygaph, Inc.,* 56 B.R. at 602. Here, the parties agree that New York law applies.

In New York, a bona fide purchaser is one who purchased the property "in good faith *without notice* and for valuable consideration." *In re Bygaph, Inc.,* 56 B.R. at 602 (*quoting In re Hardway Restaurant, Inc.,* 31 B.R. at 329) (emphasis in original). Focusing on the notice element for this case, the question then is whether Davidson was "without notice" of the property transfer.

Although New York recognizes actual and constructive notice as bars to attaining the status of a bona fide purchaser, *In re Bygaph, Inc.* at 602–03, Section 544(a) precludes consideration of the actual knowledge of a trustee or debtor-in-possession in determining the bona fide purchaser status. *McCannon v. Marston,* 679 F.2d at 16–17; *In re Euro–Swiss Int'l Corp.,* 33 B.R. at 881–82. A trustee or debtor-in-possession, however, is still bound by constructive notice under Section 544(a). "The choice of that term rather than the broader term 'notice' ... indicates that Congress did not intend to shield the trustee under § 544(a)(3) from the effect of constructive notice." *In re Euro–Swiss Int'l Corp.* at 881.

In New York, constructive notice sufficient to bar a purchaser from avoiding an unrecorded interest as a bona fide purchas-

er may be had by: (i) an examination of the record, ... (ii) reasonable inquiry of those in actual possession, ... (iii) reasonable inquiry on the basis of all the circumstances. *In re Euro–Swiss Int'l Corp.*, 33 B.R. at 882.

Under these tests, the Debtor must be charged with constructive notice. The Notices apprising the world of the impending non-judicial foreclosure sale were recorded with the City Register in Bronx County on August 18, 1987. Upon recording, the Notices became part of the record maintained by the City Register. A would-be bona fide purchaser could not simply ignore the Notices and fail to make inquiry as to whether the foreclosure there announced had occurred. *See, e.g., In re Richardson*, 23 B.R. 434, 9 B.C.D. 895 (Bankr.D.Utah 1982) (recordation of a bank notice of default and publication of a notice of a non-judicial foreclosure sale at recorder's office gave constructive notice to subsequent purchasers). On the contrary, whether a subsequent purchaser examines the public record or not, he is still charged with the facts examination would have revealed and the facts that would be revealed by reasonable inquiry based on those facts. *See Andy Assocs. v. Bankers Trust Co.*, 49 N.Y.2d 13, 424 N.Y.S.2d 139, 399 N.E.2d 1160 (1979).

Furthermore, the facts contained on this record indicate that a would-be bona fide purchaser would have learned of the pending foreclosure from inquiry of persons at the Premises. Since the Notices were posted at the Premises, inquiry of the building superintendents and residents would likely have disclosed the pending foreclosure and led to further inquiry. Here, a would-be

bona fide purchaser had a duty to inquire on the basis of the circumstances. *See In re Hardway Restaurant, Inc.*, 31 B.R. 322, 10 B.C.D. 1063 (Bankr.S.D.N.Y.1983). There is nothing in this record indicating that these Notices were ever removed.

Seeking to avoid the plain duty of inquiry that the record maintained by the City Register demands, Davidson advances three arguments: First, it asserts that HUD's Notices are not a type of "conveyance", as defined by N.Y.Real Prop.Law § 290(3) (McKinney 1989), and are thus not recordable. Second, even if the Notices were conveyances, because the Notices were not acknowledged, pursuant to N.Y.Real Prop.Law § 291, they are not recordable. Davidson thus asserts that they do not provide constructive notice to a subsequent bona fide purchaser. To this Davidson adds that whether the Notices are recordable or not, they should be treated like an executory contract or option agreement, which under N.Y.Real Prop. Law § 294 provides constructive notice to a subsequent purchaser for only thirty days.

These arguments have no merit. As to the first and second contentions, the Notices, as creatures of federal law, are not governed by New York law. HUD, under the controlling federal statutes, was not required to record the Notices with the City Register in Bronx County. *See* 12 U.S.C. §§ 3706 & 3708. But once recorded, these Notices, whether they were recordable or acknowledged under N.Y.Real Prop.Law, appeared in the record, for all to see in the principal place that any would-be bona fide purchaser of real property would check.

Nor can Davidson find any solace from N.Y.Real Prop.Law § 294.[6] That section

---

**6.** Section 294, in material part, provides:

5. The recording of the executory contract or memorandum shall be effective ... up to and including the thirtieth day after the day fixed by the contract for the time for the conveyance of title. An agreement extending the time for the conveyance of title, acknowledged or proved, and certified, in the manner to entitle a conveyance to be recorded, may be recorded, and the recording shall be effective up to and including the thirtieth day after the day fixed by such agreement for the conveyance of title.

7. [T]he recording of the option agreement shall be effective only up to and including the thirtieth day after the last day fixed by the agreement for the exercise of the option. If the option is exercised ... the optionee may extend the effectiveness of the recording of the option agreement to and including the thirtieth day after the day fixed pursuant to the option agreement for the conveyance of title ... by recording, within thirty days after the last day fixed by the option agreement for the exercise of the option, a written declara-

effectively excuses a would-be bona fide purchaser from making inquiry on the basis of a recorded contract or option for the purchase of real property that is recorded for more than thirty days. An obvious purpose for this section is to enable a seller to convey marketable title without obtaining a discharge or satisfaction from a potential buyer who failed to close. *Cf.* Law Revision Commission Report, McKinney's 1960 Session Laws of New York, 1822. The statute simply does not apply to a non-judicial foreclosure. While state law authorizes only judicial foreclosures in New York, nothing in N.Y.Real. Prop.Law § 294 and its related sections indicates that the New York State Legislature would apply the same protection in the case of a non-judicial foreclosure authorized by federal statute.

## IV.

In its Third Cause of Action, Davidson contends that the non-judicial foreclosure sale was a post-petition transfer, avoidable by a debtor-in-possession under Section 549(a) and (c) of the Bankruptcy Code. The issue is whether the transfer here occurred when the sale of the property occurred pre-petition at the closing, or post-petition on the buyer's recordation of the deed.

The term transfer is defined in Section 101(50) of the Code as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with property or with an interest in property, including retention of title as a security and foreclosure of the debtor's equity of redemption." The definition is intentionally comprehensive to include any

disposition of property or an interest in property. *See* K. King, K. Klee, R. Levin, H. Miller & P. Murphy, 2 *Collier on Bankruptcy* ¶ 101(50) at 101–115 (15th ed. 1989).

Only in certain instances does the Bankruptcy Code tie the notion of transfer of real property to perfection. Section 548(d)(1) states:

> *For purposes of this section*, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor ... [under applicable law] cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee.... (emphasis supplied). 11 U.S.C. § 548(d)(1).

Section 549 has no similar provision. All that it provides in this respect is that a trustee may not avoid a post-petition transfer made to a bona fide purchaser for present fair equivalent value without knowledge of the bankruptcy case unless a copy or notice of the petition was entered of record. 11 U.S.C. § 549(c).[7] Section 549 thus leaves the general definition of transfer applicable in determining whether a transfer occurred pre- or post-petition.

Here, 12 U.S.C. § 3713(d) precludes a right of redemption after the foreclosure sale. Thus, the transfer in this case occurred pre-petition since the Debtor lost its equity of redemption when the Premises were foreclosed on and sold.[8]

A similar result is obtained in construing applicable state law. Since New York has recognized only judicial foreclosures and foreclosures by advertisement (*see* N.Y. Real. Prop.Acts.Titles 13 and 14 (McKinney 1989)), and HUD's non-judicial foreclosure

---

tion executed by the optioner and the optionee, or by the optionee alone ....
N.Y.Real Prop.Law § 294 (McKinney 1989).

7. Section 549(c) provides:
(c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could

not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.
11 U.S.C. § 549(c).

8. Davidson does not assert that the filing of the petition related back to the beginning of the day it was filed.

sale is an exclusive creation of federal law (*see* 12 U.S.C. § 3701), New York law offers only little guidance by analogy.

Under New York law, a debtor's equitable and legal interest in property is effectively terminated upon the sale, not upon a subsequent act of perfection such as delivery or recordation of the deed. *In re Ellis*, 40 B.R. 760, 762 (Bankr.E.D.N.Y. 1984); *In re Ghosh*, 38 B.R. 600, 602–03 (Bankr.E.D.N.Y.1984); *In re Smith*, 7 B.R. 106, 108 (Bankr.W.D.N.Y.1980); *In re Butchman*, 4 B.R. 379, 380, 6 B.C.D. 403 (Bankr.S.D.N.Y.1980). As the *Smith* court observed, "the mortgagor's right of redemption, which can still be exercised after the Judgment of Sale, no longer exists after the sale itself; the sale cuts off any such right." 7 B.R. at 108 (*citing* 2A Warren's Weed, New York Real Property § 15.03 (4th ed. 1980); 38 N.Y.Jur. *Mortgages* § 286; Marks, Maloney & Paterno, *Mortgages & Mortgage Foreclosure in New York* (1980); *Belsid Holding Corp v. Dahm*, 12 A.D.2d 499, 207 N.Y.S.2d 91 (2d Dep't 1960)). Because New York does not have a redemption statute, once the debtor's interests in property are extinguished at sale,[9] "the Bankruptcy Court cannot then cultivate rights where none can grow." *In re Butchman*, 4 B.R. at 381. *See also In re Ghosh*, 38 B.R. at 603.

We thus conclude that Davidson's interests were extinguished at the sale and § 549 does not apply.

For the foregoing reasons, the motion of the defendants for partial summary judgment dismissing the First and Third Causes of Action set forth in the Amended Complaint must be and hereby is granted and Davidson's motion for partial summary judgment must be and hereby is denied. It is

SO ORDERED.

---

**9.** A number of jurisdictions, governed by redemption statutes, have recognized the right of a debtor to reinstate after a sale but prior to passing of a deed. Such recognition is inapposite here because New York does not have a redemption statute. *See In re Ghosh,* 38 B.R. 600, 603 (Bankr.E.D.N.Y.1984).